UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-cr-168 (WMW/ECW)

_____

United States of America,

        Plaintiff,

                                  **MOTION FOR RECONSIDERATION**
                                       **OF DETENTION**

v.

Montez Terriel Lee, Jr.,

        Defendant.

_____

**MOTION FOR RECONSIDERATION OF DETENTION**

      Defendant, Montez Terriel Lee, Jr. by and through counsel, Andrew Garvis, moves this court to reconsider the detention of Defendant pursuant to 18 U.S.C. §3142(f) that there are no conditions or set of conditions that will reasonably assure the appearance of Mr. Lee and protect the public. 18 U.S.C. §3142(f) provides that a detention hearing "may be reopened ... at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." (1) and (2).  The Courts have required that to reopen the detention hearing two things must be shown, (1) "present information that was not known or available to the magistrate at the time of his original detention hearing," and

1

then, (2), show that such information "is material to and has a substantial bearing on whether the basis for the detention." *United States v. Archambault,* 240 F.Supp.2d 1082, 1084 (D.S.D .2002); *accord United States v. Havens,* 487 F.Supp.2d 335, 339 (W.D.N.Y.2007); *United States v. Alonso,* 832 F.Supp. 503, 504-05 (D.P.R.1993).

Limited pre-trial detention does not violate due process so long as it is regulatory and "not penal". *United States vs. Salerno*, 481 U.S. 739, 746 (1987). In *Salerno*, the Supreme Court did not specify when "the point at which detention in a particular case might become extensively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747, n. 4. Thus, there is a point where the length of pre-trial confinement could become excessive, which would offend due process. See, *United States vs. Orena*, 986 F.2d 626, 630 (2nd Cir. 1993).

On June 18, 2020 an initial detention hearing was held regarding Mr. Lee. After hearing testimony, Mr. Lee was detained [ECF 11]. New and additional facts have come to light about Mr. Lee's detention that require the Court to consider reopening and/or revoking the detention determination.

This Court is no doubt well aware of the dramatic, worldwide effects of the COVID-19 pandemic. Chief Judge Tunheim has noted the states of emergency in play both nationally and in the state of Minnesota due to this coronavirus outbreak. Order, *In Re: Court Operations Under the Exigent Circumstances Created by COVID-19.* Judge Tunheim issued General Order No. 5, relating to the "new reality" as to how the Court will be trying to handle cases going forward with

video and audio conferencing due to the real risks associated with the spread of this virus. Order, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. March 30, 2020). The information related to the COVID-19 pandemic rapidly changes—not just daily, but hourly, and it is safe to say that all available information shows precipitous increases in confirmed infections and deaths both globally and nationally. Since June not only has the Pandemic continued a 'second surge' has now taken place and is entering the jails.

Federal Courts have worked under the auspicious of several Orders related to Covid-19 pandemic. See General Orders 1 -21. Although Covid-19 was prevalent in the country at the time Mr. Lee had his detention hearing, there was limited information that the virus was inside the jails. On November 4, 2020 Chief Judge John Tunheim issue General Order No. 20 related to the Covid-19 pandemic. In this order the Court postponed all criminal and civil jury trials until December 31, 2020 due to the real concerns about the outbreak in the jails and in the State. *In Re: Updated Guidance to Court Operations caused by the exigent circumstances created by Covid-19*.

Nationally there are roughly 11 million individuals that have contracted Covid-19 and over 237,000 that have died since March.[1] In the State of Minnesota 184,000 have contracted Covid-19 and 2,675 have died.[2] These numbers change

---

[1] https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days last visited November 10, 20202
[2] https://www.health.state.mn.us/diseases/coronavirus/situation.html  last visited November 10, 2020

daily. Schools are closed, businesses are closed, and Minnesota is now on its sixth iteration of Governor Walz executive order.[3] That Order continues the limitation of large gatherings of groups and requires the closing of bars and restaurants at certain times.

The jails have not been immune from the outbreak as of November 8, 2020 over 2000 inmates in Minnesota prisons have tested positive and three (3) individuals have died.[4] Currently, Sherburne County is in lock down as multiple staff and inmates have tested positive. Washington County is not immune from the issue, as since September 2020, 903 Stillwater inmates have tested positive for the virus, and six of them had to be hospitalized. Stillwater prison has now been placed on lockdown.[5]

In the Washington County Jail, they have limited space for those that are positive for Covid-19, and those that are positive are being quarantined together. Anyone leaving the building for Court is being told they will be quarantined with these individuals, thus exposing them to others that have the virus even if they don't have it. There is limited social distancing and the jail remains a "closed loop" that with the virus already inside provides no real ability to avoid it.

---

[3] *Governor Walz Emergency order* 20-97 (November 12, 2020), https://mn.gov/governor/assets/EO%2020-97%20Final_tcm1055-453622.pdf
[4] https://mn.gov/doc/about/covid-19-updates/ last visited November 10, 2020
[5] https://minnesota.cbslocal.com/2020/11/08/protesters-rally-outside-stillwater-prison-after-fatal-covid-outbreak-prisoners-lives-also-matter/

*Mr. Lee's child*

On August 6, 2020 Mr. Lee's biological child N.L. was taken from his biological mother and placed into relative foster care. Mr. Lee was informed of this in August and that Child Protection had initiated an action in Freeborn County related to the out of home placement. As part of the case plan Freeborn County is engaging in a concurrent option in case the primary biological mother is not able to reunify with her children. Mr. Lee, who has had a strong relationship with N.L. is the biological father and has been contacted and has been willing to engage in the process of this concurrent plan for placement. He has met with Child Protection several times and engaged in the process of a case plan. The plan, however, cannot be further implement without evaluating a place to live for Mr. Lee and his child N.L. This requires that Mr. Lee be released and allowed to be back into the community so that the case plan be further developed.

With the Covid-19 Pandemic continuing to grow in the jails and all Court matters stayed for months due to it, coupled with the fact that Mr. Lee is needed by his son detention has become so punitive that the court should consider revocation of the detention order. There are options available for pretrial release to protect the public and assure attendance. The court can require home detention, reporting to pretrial and any other geographical limitations and controls.

Dated: <u>November 16, 2020</u>                    *Andrew S. Garvis*
                                                    Andrew S. Garvis
                                                    Koch and Garvis LLC
                                                    3109 Hennepin Ave. S.
                                                    Minneapolis, MN 55408
                                                    (612) 827-8101
                                                    Minn. Attny. No. 257989