# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 20-cr-168 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Montez Terriel Lee, Jr., | |
| Defendant. | |

This matter is before the Court on Defendant Montez Terriel Lee, Jr.'s Motion for a Bill of Particulars (Dkt. 25) and Motion for Reconsideration of Detention (Dkt. 31).

The Court held a hearing on the motions on November 20, 2020 by Zoom for Government. Thomas Calhoun-Lopez, Assistant U.S. Attorney, appeared on behalf of Plaintiff United States of America ("the Government") and Andrew Garvis appeared on behalf of Defendant Montez Terriel Lee, Jr., who consented to holding the hearing by Zoom for Government and was present at the hearing via Zoom for Government.

### I.   MOTION FOR A BILL OF PARTICULARS (DKT. 25)

**A.   Factual and Procedural Background**

In an August 12, 2020 Indictment (Dkt. 14), a Grand Jury indicted Defendant Montez Terriel Lee, Jr. ("Defendant" or "Lee") on one count of Arson on Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i). As to this Count, the Indictment provided in relevant part as follows:

## COUNT 1
(Arson on Property Used in Interstate Commerce)

On or about May 28, 2020, in the State and District of Minnesota, the defendant,

**MONTEZ TERRIEL LEE, JR,**

maliciously damaged and destroyed, by means of fire and explosive materials, the Max It Pawn Shop, located at 2726 East Lake Street, a building used in interstate commerce, in violation of Title 18, United States Code, Section 844(i)[.]

(Dkt 14 at 1 (emphasis in original).)

Defendant now seeks a bill of particulars "as to the means of what explosive materials were used by defendant to set fire to the Max It Pawn." (Dkt. 25.) The Government counters that the Indictment "provides sufficient notice to the Defendant to understand the charge and prepare his defense. The Defendant's request should be addressed through discovery, which the United States has provided." (Dkt. 28 at 5.) Further, the Government argues that the Indictment complies with Rule 7(c) of the Federal Rules of Criminal Procedure, as it sets forth that Defendant is charged with damaging and destroying a building used in interstate commerce by fire and explosives materials, provides the date of the crime, and provides the address of the building. (*Id.* at 6.)

**B.   Analysis**

Indictments and bills of particulars are governed by Rule 7 of the Federal Rules of Criminal Procedure, which provides in relevant part:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be

>signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1).

Rule 7(f) of the Federal Rules of Criminal Procedure gives courts the power to direct the filing of a bill of particulars. District courts have broad discretion in granting or denying a bill of particulars. *See United States v. Sileven*, 985 F. 2d 962, 966 (8th Cir. 1993) (citation omitted).

In *Hamling v. United States*, 418 U.S. 87 (1973), the Supreme Court found that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* at 117 (citations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (citations omitted); *see also United States v. Gilkerson*, 556 F. 3d 854, 856 (8th Cir. 2009) ("To be sufficient, the information must contain the elements of the offense and inform the defendant of the charges against him, as well as 'enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'") (citation omitted). "A

bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." *United States v. Hernandez*, 299 F. 3d 9 84, 989-90 (8th Cir. 2002) (citation omitted). However, "a bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *United States v. Huggans*, 650 F. 3d 1210, 1220 (8th Cir. 2011) (citations omitted).

> Here, Lee has been charged under Section 844, which provides in relevant part:
>
> (i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of **fire <u>or</u> an explosive**, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

18 U.S.C. § 844(i) (emphasis added).

Lee is correct that the Government has not specified what type of explosives were used in the alleged arson. However, § 844(i) covers destruction of property "by means of fire <u>or</u> an explosive." Defendant's request should be addressed through discovery, which the United States has provided. At the hearing, Lee's counsel acknowledged that he had

4

received discovery from the Government as it relates to the single count in the Indictment and had no material issue with respect to the Government's production. *See United States v. Finn*, 919 F. Supp. 1305, 1326 (D. Minn. 1995) (footnote omitted) ("Although the allegations are not as detailed as the Defendants may prefer, that is not the test we apply. A Bill of Particulars serves an essential function in eliminating surprise, but the Bill was not designed to substitute for pretrial discovery."), *aff'd sub nom. United States v. Pemberton*, 121 F.3d 1157 (8th Cir. 1997); *see also United States v. Fijal*, No. 12-CR-14-A, 2013 WL 5522887, at *15 (W.D.N.Y. Oct. 3, 2013) (finding no unfair surprise given that the defendant did not contest the government's representation that most of the information sought was contained in the voluntary discovery provided by the government). Indeed, it appears by way of his Motion to Dismiss Indictment (Dkt. 26) that Lee has the information he needs to avoid surprise with respect to the scope of the Indictment given his assertion that the Indictment should be dismissed since he did not use an explosive or incendiary device as defined by the relevant statutes. (Dkt. 26.) Moreover, the Government asserted in its response to the Motion to Dismiss Indictment that its theory of its case at this time is that it will be able to prove at trial that Lee used fire to destroy the building at issue. (Dkt. 28 at 7.) In sum, Lee has sufficient information as to the nature of the charge against him with sufficient precision to enable him to prepare for trial.

Given that where a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the acts conjunctively charged may establish guilt, *see United States*

5

*v. Mohr*, 728 F.2d 1132, 1135 (8th Cir. 1984), and the fact that Lee's motion practice indicates he has knowledge of the scope of the count against him, by virtue of the discovery he has received from the Government, the Court denies Lee's Motion for a Bill of Particulars.

## II.     MOTION FOR RECONSIDERATION OF DETENTION (DKT. 31)

### A.     Factual and Procedural Background

On June 11, 2020, the United States charged Defendant by criminal complaint with arson on property used in interstate commerce, in violation of 18 U.S.C. § 844(i). (Dkt. 1.)

On June 18, 2020, United States Magistrate Judge David T. Schultz held a preliminary and detention hearing with respect to Defendant. (Dkt. 10.) Prior to the hearing, the U.S. Pretrial Services Officer interviewed Defendant and issued a report recommending detention, finding that Defendant presented a risk of non-appearance and a danger to the community. The United States called as a witness ATF Special Agent Liane Sellner, who testified regarding the facts and circumstances of the arson charge. As part of his findings, Judge Schultz found as follows:

> Under 18 U.S.C. § 3142, pretrial detention may be ordered either upon a clear and convincing showing that release will result in a danger to the community or upon a showing by a preponderance of the evidence that release will result in a serious risk of flight. The Court finds that detention is justified in order to ensure the safety of the community.
>
> The preliminary hearing established probable cause to believe that the Defendant committed the offense charged in the complaint. A rebuttable presumption therefore arises that no condition or combination of conditions will reasonably ensure the Defendant's appearance in court and the safety of the community. *See* 18 U.S.C. § 3142(e).

6

>There is no evidence before the Court that would rebut this presumption. Furthermore, the Defendant has a criminal history that includes acts of violence. His record under court supervision includes multiple probation violations and failures to appear. He committed two crimes while he was on active supervision for a felony assault conviction. He was also under court supervision when he is alleged to have committed the instant offense.

(Dkt. 11 at 2.)

Based upon the evidence presented, Judge Schultz ordered Lee detained, finding that the United States had made a clear and convincing showing that no condition or combination of conditions of bond would reasonably ensure the safety of the community. (*Id.* at 2-3.)

As set forth previously, an Indictment issued on August 12, 2020, indicting Lee on one count of Arson on Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i). (Dkt. 14.)

In support of his present Motion, Defendant argues that although COVID-19 was prevalent in the country at the time of his initial detention hearing, there was limited information that the virus was inside the jails. (Dkt. 31 at 3.) According to Lee, a number of county jails in Minnesota, including Washington County Jail where he is being detained, have had inmates and staff that have tested positive for COVID-19. (*Id.* at 4.)

Another basis for the revocation of detention asserted by Lee is that his biological son needs him, as he was taken from his biological mother and placed into foster care with a relative. (*Id.* at 5.) Lee asserts that he was informed of this in August, and further learned that Child Protection had initiated an action in Freeborn County related to the out-of-home placement. (*Id.*)

7

In sum, Lee seeks relief in the form of his release pending trial to home detention, reporting to pretrial, and any other geographical limitations and controls. (*Id.*)

The Government opposes this Motion on the basis that COVID-19 is not a basis to reopen detention, as it is not material to the sole question before the Court of whether Defendant should be detained given the factors considered by Judge Schultz under 18 U.S.C. § 3142(g). (Dkt. 36 at 3-4.) The Government similarly argues that the custody of Lee's son does not affect the calculus under the Bail Reform Act and does not in any way address Judge Schultz's finding that Defendant represents a danger to the community. (*Id.* at 4-5.)

**B.     Analysis**

Taking Defendant's grounds for reopening the detention hearing as true, they are insufficient. A detention hearing may be reopened "if the judicial officer finds that information exists **that was not known to the movant at the time of the hearing** and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B) (emphasis added). "In other words, to reopen a detention hearing a defendant must, first, 'present[] information that was not known or available to him at the time of his original detention hearing,' and then, second, show that such information 'is material to and has a substantial bearing on whether he should remain detained.'" *United States v. Petters*, No. 08-364 (RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) (quoting *United States v. Archambault*, 240 F. Supp. 2d 1082, 1084 (D.S.D. 2002)).

8

### 1. Custody of Lee's Child

With respect to Lee's son, while the June 2020 Pretrial Services report noted that Lee saw the child regularly, there was no indication that he was active in the everyday care of the child. Although the biological mother has temporarily lost custody of the child, the fact remains that the child is being taken care of by a biological grandparent, any final determination as to custody is at least six months to a year away, and it appears that at most Lee would be allowed supervised visitation with the child if released. (Dkt. 33 at 2.) Moreover, although in custody, Lee has been able to work with the social worker for alternative placements if the biological mother fails to comply with directives, and the child cannot return to the mother's residence. (*Id.*) In sum, the situation surrounding the custody of Lee's son does not amount to a material change, let alone a change in facts that are material to his continued detention. *See United States v. McCoy*, No. 2:12-CR-218 TS, 2013 WL 492100, at *3 (D. Utah Feb. 8, 2013) ("However, Defendant's custody issues, concerns regarding the competence of his ex-wife as a parent, and desire to provide child support are issues that were raised by Defendant at the time of the Detention Order. As such, these issues do not qualify as new information previously unknown to the Defendant. Further, the Court finds that this information is not material to the issues of assuring his appearance as required and the safety of the community.").

### 2. COVID-19 Pandemic

While the Court recognizes the unprecedented magnitude of the pandemic, this Court, like the court in *United States v. Banks*, is not yet "convinced the COVID-19

9

pandemic is a 'material change of circumstances' warranting a renewed evaluation of [a] prior detention order" without more.  4:19CR3116, 2020 WL 1450549, at *1 (D. Neb. Mar. 25, 2020) (denying defendant's motion for release).  The Court acknowledges, as asserted by Lee in his Reply (Dkt. 37 at 3), that some courts have determined that the COVID-19 health risk "can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community."  *United States v. Martin*, 447 F. Supp. 3d 399, 401 (D. Md. 2020); *see also United States v. Ramirez-Rodriguez*, 453 F. Supp. 3d 1242, 1247-48 (D. Minn. 2020); *United States v. Terry*, No. 5:20-CR-50021-001, 2020 WL 4745746, at *2 (W.D. Ark. June 23, 2020) ("In this Court's opinion, the more persuasive position is that the COVID-19 pandemic may constitute a material change of circumstances that justifies renewed evaluation of a detention order, as the pandemic may relate to the detainee's 'physical and mental condition' under § 3142(g)(3)(A).").

However, in those cases, the courts noted that the defendants all suffered from physical medical conditions that placed them at greater risk for serious complications from COVID-19.  Indeed, the Court in *Ramirez-Rodriguez* noted that "**central** to Mr. Ramirez-Rodriguez's request for relief are his age (52) and the fact that he suffers from diabetes."  453 F. Supp. 3d at 1245 (emphasis added).  In this case, there is no assertion that Lee, who is 25 years old, suffers from any physical illness that would place him at a significant risk for serious complications from COVID-19.

Regardless, the "COVID-19 pandemic cannot be the sole basis for releasing a

defendant from custody pending trial; the Court must still consider the Section 3142(g) factors." *Martin*, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (explaining that "as concerning as the COVID-19 pandemic is," a court must nonetheless conduct "an individualized assessment of the factors identified by the Bail Reform Act"). Section 3142(g) of the Bail Reform Act provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;
> >
> > (3) the history and characteristics of the person, including—
> >
> > > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> >
> > (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

11

18 U.S.C. § 3142(g).

Here, Judge Schultz considered those factors as part of his June 18, 2020 Order. Because Lee is charged with destruction of property using fire or explosives, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance in court and the safety of the community. 18 U.S.C. § 3142(e). Judge Schultz concluded that there was no evidence that would rebut that presumption as to the safety of the community.

Lee does not contest the fact that the crime he has been indicted upon is a crime of violence or the weight of evidence against him with respect to the allegations. Lee also does not challenge Judge Schultz's or Pretrial Services' characterization of his history:

> [T]he Defendant has a criminal history that includes acts of violence. His record under court supervision includes multiple probation violations and failures to appear. He committed two crimes while he was on active supervision for a felony assault conviction. He was also under court supervision when he is alleged to have committed the instant offense.

(Dkt. 11 at 2; *see also* Dkt. 33 at 1.) Indeed, Lee was on active supervised release in Olmsted County for the noted felony assault (Third Degree Assault-Substantial Bodily Harm) when the alleged instant offense of arson occurred. (Dkt. 33 at 1.)

Lee has not identified any evidence that would rebut the presumption of detention, and his criminal history still exists, as do Pretrial Services' concerns regarding Lee, which he does not address. While it is true that the COVID-19 pandemic puts Lee at some risk to acquire the virus—a concern the Court does not take lightly—Lee has not proffered any evidence regarding his risk given his health, considering the risk to the public at large, that would outweigh the evidence and previous findings that Lee poses a

12

serious danger to the community if released.  The Court therefore denies Lee's motion to the extent it is brought under § 3142(f)(2)(B).

C.     **Temporary Release Pursuant to 18 U.S.C. § 3142(i)**

For the first time in his reply brief, Lee also appears to seek temporary release pursuant to 18 U.S.C. § 3142(i).  (Dkt. 37 at 2-3.)  Section 3142(i) provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason."

The Court finds that Lee has not presented a compelling reason for temporary release pursuant to § 3142(i).  Courts have adopted a framework for analyzing an assertion of COVID-19 as a compelling reason for release under § 3142(i) and consider the following: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.  *See, e.g.*, *United States v. White*, No. 19-cr-204 (ECT/BRT), slip op. at 9-10 (D. Minn. Apr. 1, 2020) (citing *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (applying four-factor test from *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020))); *United States v. Dodd*, No. 20-CR-0016 (NEB/HB), 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (applying *Clark* factors).

13

The first factor weighs heavily in favor of continued detention based on Judge Schultz's original analysis.  As for the second factor, Lee does not assert that he is uniquely susceptible to health risks arising from COVID-19 due to an underlying medical condition.[1]  Moreover, given Lee's representation that Washington County has had positive cases, releasing Lee at this point could risk exposing his girlfriend and possibly even his son (whose best interests he has in mind).  Further, as discussed in *Clark*, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody."  2020 WL 1446895, at *7.  Given that Lee is charged with committing arson while on supervised release for assault, the Court is not confident that he will comply with a home confinement order that would offer him protection from the pandemic, thereby placing the public as whole at a higher risk with respect to spread of the virus.

The Court also considers Lee's concerns regarding the custody issues surrounding his son.  Given Lee's previous relationship with the child, the fact that the child is with

---

[1] The Court notes that courts have rejected release under § 3142(i) even where the defendant had an underlying health condition that placed them at an increased risk.  *See United States v. Green*, No. CR 19-85, 2020 WL 1493561, at *1 (W.D. Pa. Mar. 27, 2020) (acknowledging defendant's documented history of asthma, but denying temporary release); *United States v. Cox*, No. 219CR00271RFBVCF, 2020 WL 1491180, at *4 (D. Nev. Mar. 27, 2020) (discussing the risk COVID-19 poses to a diabetic inmate but denying temporary release); *United States Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *4 (D. Kan. Mar. 25, 2020) (same).

his grandmother, Lee's ability to communicate with the social worker regarding his son's placement, and that a final decision with respect to placement is at least six months away, the Court does not find a compelling need for Lee's temporary release so as to ensure that the best interests of his son, especially given Lee's danger to the community.

The Court therefore denies Lee's motion to the extent it is brought under § 3142(i).

### III.  ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant Montez Terriel Lee, Jr.'s Motion for a Bill of Particulars (Dkt. 25) is **DENIED**.

2. Defendant Montez Terriel Lee, Jr.'s Motion for Reconsideration of Detention (Dkt. 31) is **DENIED**.

DATED: December 18, 2020                     *s/Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             United States Magistrate Judge