```
 1                  UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
 2
      ------------------------------------------------------------
 3                                  )
      United States of America,     )  File No. 20-cr-168
 4                                  )            (WMW/ECW)
              Plaintiff,            )
 5                                  )
      vs.                           )  St. Paul, Minnesota
 6                                  )  January 14, 2022
      Montez Terriel Lee, Jr.,      )  10:48 a.m.
 7                                  )
              Defendant.            )
 8    ------------------------------------------------------------

 9
            BEFORE THE HONORABLE WILHELMINA M. WRIGHT
10              UNITED STATES DISTRICT COURT JUDGE

11                     (SENTENCING HEARING)

12
      APPEARANCES (Via Zoom Videoconference):
13     For the Plaintiff:        U.S. Attorney's Office
                                 THOMAS CALHOUN-LOPEZ, AUSA
14                               600 U.S. Courthouse
                                 300 South Fourth Street
15                               Minneapolis, Minnesota 55415

16     For the Defendant:        Rivers Law Firm, P.A.
                                 BRUCE M. RIVERS, ESQ.
17                               Suite 300
                                 701 Fourth Avenue South
18                               Minneapolis, Minnesota 55415

19     Court Reporter:           LORI A. SIMPSON, RMR-CRR
                                 Suite 146
20                               316 North Robert Street
                                 St. Paul, Minnesota 55101

21

22

23

24
           Proceedings reported by certified stenographer;
25    transcript produced with computer.
```

1              **P R O C E E D I N G S**

2                  **IN OPEN COURT**

3            **(VIA ZOOM VIDEOCONFERENCE)**

4        (Defendant present)

5            COURTROOM DEPUTY:  The United States District

6    Court for the District of Minnesota is now in session.  The

7    Honorable Wilhelmina Wright is presiding.

8            THE COURT:  Thank you.  Good morning, everyone.

9            COURTROOM DEPUTY:  The matter before the Court is

10   Case Number 20-cr-168, United States of America vs. Montez

11   Terriel Lee, Jr.

12           Counsel, please note your appearance.

13           MR. CALHOUN-LOPEZ:  Good morning, Your Honor.

14   Thomas Calhoun-Lopez on behalf of the United States.

15           THE COURT:  Good morning, Mr. Calhoun-Lopez.

16           MR. RIVERS:  Good morning, Your Honor.  Bruce

17   Rivers on behalf of Mr. Montez Lee, who appears via Zoom.

18           THE COURT:  Thank you.  Good morning, Mr. Rivers,

19   and good morning, Mr. Lee.

20           We are here appearing today by Zoom, and so I will

21   ask that everyone who is listening to mute your device so

22   that we don't have background noise that interferes with our

23   ability to proceed today.

24           Now, Mr. Lee previously pleaded guilty to arson on

25   property used in interstate commerce, and that's a violation

 1    of Title 18, United States Code, Section 844(i).

 2              And, Mr. Calhoun-Lopez, have you received a copy

 3    of the Presentence Investigation Report and the addendum?

 4              MR. CALHOUN-LOPEZ:  We have, Your Honor.

 5              THE COURT:  Okay.  And, Mr. Rivers, have you and

 6    Mr. Lee received a copy of the Presentence Investigation

 7    Report and the addendum?

 8              MR. RIVERS:  We have, Your Honor, and I've

 9    reviewed it with him.

10              THE COURT:  I didn't hear the last part of what

11    you said.

12              MR. RIVERS:  I said we've received it and I

13    reviewed it with Mr. Lee.

14              THE COURT:  Okay.  And, Mr. Lee, are you able to

15    think clearly today?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  And, sir, do you know why you are here

18    attending this hearing?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Okay.  Before moving on to other

21    matters, I want to ask about the documents that we have

22    currently under seal.

23              Under our Local Rule 49.1(c)(2), certain documents

24    are automatically unsealed when the judgment is entered

25    unless I order otherwise, and that would include in this

1    case documents which are letters of support that were filed

2    at Docket Number 79.

3              Does either party move to keep these materials

4    under seal?

5              MR. RIVERS:  No, Your Honor.

6              MR. CALHOUN-LOPEZ:  The government does not, Your

7    Honor.

8              THE COURT:  I didn't hear you.

9              MR. CALHOUN-LOPEZ:  Sorry, Your Honor.  The United

10   States does not move if Mr. Lee does not.

11             THE COURT:  Okay.  And am I correct that neither

12   the United States nor Mr. Lee objects to the Presentence

13   Investigation Report?

14             MR. CALHOUN-LOPEZ:  The government has no

15   objections, Your Honor.

16             MR. RIVERS:  Likewise, Your Honor, the defense has

17   no objections to the PSR.

18             THE COURT:  Okay.  Mr. Calhoun --

19             MR. CALHOUN-LOPEZ:  The government has no

20   objections, Your Honor.

21             THE COURT:  Thank you.  We are going to take a

22   brief break here.

23        (The Court and courtroom deputy confer)

24             THE COURT:  Then I adopt as the findings of this

25   Court all of the factual statements that are contained in

1    the Presentence Investigation Report.

2            Now, is the government moving for an additional

3    one-level reduction in offense level for acceptance of

4    responsibility?

5            MR. CALHOUN-LOPEZ:  We do so move, Your Honor.

6            THE COURT:  Okay.  Then that motion for an

7    additional one-level reduction for acceptance of

8    responsibility under Section 3E1.1(b) of the sentencing

9    guidelines is granted.

10            And I determine that the sentencing guidelines

11   apply as follows:  First, a total offense level of 35, a

12   Criminal History Category of IV, an imprisonment range of

13   235 to 240 months, a supervised release term of one to three

14   years, a fine range of 40,000 to 250,000 dollars, and a

15   special assessment of $100.

16            Does either the United States or Mr. Lee have any

17   corrections or any objections to my guideline calculations

18   in light of my findings and rulings?

19            MR. CALHOUN-LOPEZ:  The government does not, Your

20   Honor.

21            MR. RIVERS:  The defense doesn't either, Your

22   Honor.

23            THE COURT:  Okay.  We're going to take a brief

24   recess at this point.  I need to get the statement that I

25   need to make regarding the CARES Act, and I don't have it at

1    the bench with me.  Before we proceed, we need to make those

2    findings for us to proceed virtually today.

3              So we'll take a brief recess.  Thank you.

4         (Recess taken at 10:54 a.m.)

5                        *    *    *    *    *

6         (11:05 a.m.)

7                          **IN OPEN COURT**

8              THE COURT:  So thank you for your patience.  We

9    are back on the record in this matter.  I realized, with the

10   assistance of my law clerks, that I had not reviewed the

11   findings with Mr. Lee that need to be made for us to be

12   proceeding by video.

13             And so, Mr. Lee, I want to make sure that you are

14   consenting to having this hearing by video as opposed to in

15   person in the courtroom today.  So I am going to ask you

16   some questions and explain what your rights are as to that

17   aspect and then we'll proceed, if you wish to proceed.

18             So through your counsel, as I understand it, you,

19   Mr. Lee, consented to holding today's sentencing hearing by

20   way of videoconference.  Is that correct?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  And do you understand that you

23   may choose not to consent to having the sentencing hearing

24   today by videoconference and instead have that hearing in

25   person at a later time?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  And have you had an opportunity

3     to discuss this with Mr. Rivers, your attorney?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And do you have any questions for me

6     or for Mr. Rivers about your decision?

7          THE DEFENDANT:  No, I do not.

8          THE COURT:  Okay.  And, Mr. Lee, has the United

9     States or has anyone else made any promises to you in order

10    to get you to consent to having this sentencing hearing

11    today by video?

12         THE DEFENDANT:  No, Your Honor.

13         THE COURT:  And so no one has forced you or

14    threatened you or coerced you in order to get you to consent

15    to today's video hearing; is that correct?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Okay.  And so do you consent to the

18    video hearing voluntarily and of your own free will?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  And are you able to think clearly

21    today?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Okay.  And so you knowingly and

24    intelligently and voluntarily give up your right to have the

25    sentencing hearing in person in the courtroom at a later

1    date; is that right?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Okay.  And so in light of the exigent

4    circumstances that are brought on by our COVID-19 pandemic,

5    today's sentencing hearing is being conducted by video.

6              And the CARES Act allows today's hearing to be

7    conducted by videoconference when the Judicial Conference of

8    the United States finds that emergency conditions due to the

9    national emergency declared by the President under the

10   National Emergencies Act with respect to COVID-19 will

11   materially affect the functioning of the federal courts,

12   when the chief judge of the district specifically finds that

13   felony sentencings cannot be conducted in person without

14   seriously jeopardizing public health and safety, and the

15   district judge in a particular case finds for specific

16   reasons that the plea or sentencing in the case cannot be

17   further delayed without serious harm to the interests of

18   justice.

19             And so in accordance with the CARES Act, I make

20   the following findings:

21             Our President has declared a national emergency in

22   response to COVID.

23             The Judicial Conference of the United States found

24   that emergency conditions with respect to COVID-19 have

25   materially affected and will materially affect the

1    functioning of the federal courts.

2              And Chief Judge Tunheim on December 6, 2021

3    ordered the Court to continue to hold criminal proceedings

4    by videoconference when the defendant consents to appearing

5    at the proceeding remotely.

6              And so I specifically find that, because of the

7    COVID pandemic, holding this hearing by videoconference will

8    allow Mr. Lee to be sentenced without delay and,

9    accordingly, I find that the interests of justice will be

10   served by holding this hearing by videoconference.

11             So, for all of these reasons, I find that we

12   cannot delay further this hearing in this case without

13   serious harm to the interests of justice.

14             Now, does either party object to the findings that

15   I have just made?

16             MR. CALHOUN-LOPEZ:  The United States does not

17   object, Your Honor.

18             THE COURT:  Mr. Rivers?

19             MR. RIVERS:  No objection from the defense, Your

20   Honor.

21             THE COURT:  Okay.  And are there any additional

22   findings that counsel would like the Court to make with

23   regard to the remote manner in which we are holding this

24   sentencing hearing by video?

25             MR. CALHOUN-LOPEZ:  No, Your Honor.

```
 1                MR. RIVERS:  No, Your Honor.

 2                THE COURT:  Okay.  Now, am I correct, then, as to

 3      the sentencing, that neither the United States nor Mr. Lee

 4      has moved for a departure under the sentencing guidelines;

 5      is that correct?

 6                MR. CALHOUN-LOPEZ:  The government has not moved

 7      for a departure, Your Honor.

 8                THE COURT:  Mr. Rivers --

 9                MR. RIVERS:  That is --

10                THE COURT:  I didn't hear you.

11                MR. RIVERS:  That is correct, Your Honor.

12                THE COURT:  Okay.  I apologize for interrupting

13      you.

14                So then we will proceed to the allocution stage of

15      the hearing.  Mr. Rivers, you may make your arguments in

16      favor of a variance and say anything else on behalf of

17      Mr. Lee.

18                MR. RIVERS:  Your Honor, first I want to just

19      start off by saying it has been an absolute privilege to

20      represent Mr. Lee.  He is, by all means, a very thoughtful

21      person with a very colorful and tumultuous background.

22                Mr. Lee on this particular day, as I've indicated

23      in my position pleading, was caught up in a mass protest

24      against police violence.  And what makes this offense

25      different, I think, most is that it wasn't done for personal
```

1   gain out of a need to protest.

2          And the offense itself, when it happened, he did

3   check to see if there was anybody in the building.  And so

4   you can tell from his motivations, you know -- and the

5   government talked about luck and misfortune, and I think

6   that's something here that can't be lost, is how had the

7   situation been a little bit different, we wouldn't be here

8   today.  Had Mr. Lee made different decisions, we wouldn't be

9   here today.

10          But he, from the very outset, gave to law

11   enforcement a full and complete statement and admitted his

12   conduct.  He's expressed remorse.  He's pled guilty.

13          And I just want the Court also to know that the

14   challenge to the guidelines that I initially intended to

15   bring was on me and not on any kind of lack of acceptance

16   from Mr. Lee.  It was just merely more of a technical legal

17   challenge, and he agreed to withdraw that challenge.

18          I think that, you know, the guideline factors, as

19   outlined by both the government and myself, have been fairly

20   well addressed in our position pleading, so I am not going

21   to belabor those.

22          But it is a serious offense and I think it does

23   require a serious sentence, not one that is reflected in the

24   guidelines.  The criminal history might be a little bit

25   overstated, and I think that the guidelines purposes and

1    3553 is served by the reasons we stated in our position

2    pleadings.

3             And with that said, he's got a lot of support.  He

4    is a thoughtful man and I would ask Your Honor --

5        (Zoom transmission interrupted)

6             THE COURT:  We just lost you or lost what you last

7    said.  You said, "He is a thoughtful man," and then I did

8    not hear anything else.

9             MR. RIVERS:  And I would ask you to sentence him

10   to 88 months.

11            THE COURT:  Okay.  Thank you.

12            Now, Mr. Lee, before I impose your sentence, you

13   have the right to address the Court as well.  Is there

14   anything you would like to say on your own behalf?

15            THE DEFENDANT:  Yes, Your Honor.

16            I wish I knew what to say to make it all okay or

17   to be able to go back in the past and take back my hurtful

18   actions.  I can't begin to express the amount of remorse

19   that I feel for all those affected by the decisions I made.

20            My intentions were never meant to bring harm or

21   disruption to anyone's life.  I was hoping to be another

22   voice added to the cry for change.  I wanted to be part of

23   the solution.  Instead I was part of the problem.  I helped

24   tear the city down instead of lending a hand to help repair

25   it.

1          And although I don't stand by my actions, I stand

2     by my reasoning behind them.  For years the black community

3     has been the target for injustice, abuse, hate, and police

4     brutality.  Racial profiling has led to the numerous and

5     senseless murders of my people with no one to hold those

6     accountable for their actions.

7          What scares me the most is that it could be

8     somebody I know whose death is televised for the world to

9     see.  It could be a friend, my brother, or my son.  This is

10    the type of environment I am forced to raise my children in,

11    a world where I'm demonized for the color of my skin, the

12    fact that racism is still relevant.

13          Understand I am no civil rights activist.  I grew

14    up gang-banging and selling drugs.  I was a stereotypical

15    black man with no guidance and no future to look forward to.

16    I was raised thinking that I would end up dead or in prison.

17          Ironically, I tried so hard to steer myself to a

18    better path that I ended up exactly where I didn't want to

19    be.  I had hopes of starting my own business, going back to

20    college, providing my children with a better life than what

21    I was given, looking forward to being able to raise them

22    right.  I just hope that instead of losing that opportunity,

23    that I am given a second chance.

24          I know what it's like to not have both parents in

25    your life, and I don't want to take my kids through that.

1   They deserve better, which is why I want to apologize to

2   Nikko and Aliyah.  I am sorry I haven't been there for you

3   since being locked up.  I know it's been hard on you guys,

4   and I am going to do everything in my power to right my

5   wrongs, to be the father you need me to be.

6          I want to say sorry to the family of Oscar Lee

7   Stewart.  I can't imagine what you guys have been going

8   through since his death.  Nothing I can say could ever make

9   it better or more bearable.  I never meant for anyone to get

10  hurt, and I hope you believe me when I say I took

11  precautions of making sure of that.  And although I don't

12  know what happened to him that night, if I didn't start that

13  fire he may have been alive today.  I hope his family truly

14  understands how I am sorry for their loss.

15         To anyone I may have let down, just know I had

16  good intentions.  I will continue to try to better myself

17  and my community, to learn what I should and educate when

18  I can.

19         To the owners and employees of the Max It Pawn

20  shop, I'm sorry for the destruction I caused.  I took away

21  your guys' livelihood.  I disrupted your lives off a

22  split-second decision.  I never took the time to think of

23  who I would be hurting.  You guys depended on those

24  paychecks.  I have no idea what type of domino effect I may

25  have caused.

1          To everyone who has shown me some support over the

2     last year and a half, I thank you.  I've received so many

3     letters from people across the U.S. and overseas that it's

4     been hard to keep up with.  I thank you all for seeing me as

5     something more than a criminal.  I have never had this type

6     of support ever in my life.  I have had people tell me I

7     inspire them.  I have had students from Minnesota colleges

8     call me their hero.  Everyone from professors to doctors,

9     lawyers and anyone in between writing to tell me they

10    support me in the cause.

11         I refuse to not learn from this experience.  I

12    hope to make something positive out of it.  I have read too

13    many stories of people coming from prison and making a huge

14    impact on their community.  This moment in life doesn't

15    define who I am, but it can help mold me into the person I

16    want to become, who I know I can be.

17         I want to thank the Minnesota Uprising Arrestee

18    Support for being there for me since I started this journey.

19    I wouldn't have been able to manage without you guys.

20         To Kaylee, thank you for not leaving my side

21    throughout all of this.  You have always seen something more

22    of me even when I couldn't.  I'm hoping I am given a chance

23    to do right by you.

24         Finally, to Les, you inspire me to be a better

25    person.  I'm glad I have such a positive role model to learn

1    from.

2              Thank you.

3              THE COURT:   Thank you, Mr. Lee.

4              Mr.  Calhoun-Lopez, you may make your arguments in

5    favor of a variance and say anything else that you would

6    like on behalf of the United States.

7              MR. CALHOUN-LOPEZ:   Thank you, Your Honor.

8              Let me begin just by noting that Mr. Lee's

9    statement there was clearly very thoughtful and very

10   powerful, and I believe he should be commended for that.

11   And, of course, Mr. Rivers makes very good arguments as

12   well.

13             Your Honor, this is a difficult case.  It is one

14   that challenges many aspects of our criminal justice system,

15   and it's a case informed by very significant aggravating and

16   mitigating circumstances.  And based on those circumstances,

17   we are requesting that the Court impose a sentence of

18   144 months' imprisonment.  This is a downward variance, of

19   course, from the guideline range of 235 to 240 months.

20             As we addressed, as everybody has recognized, Your

21   Honor, the most important aspect of this case is the life of

22   Oscar Lee Stewart.  I have talked to his family, and I know

23   how much they love him and how much they miss him.  And as

24   the defendant has recognized, Mr. Lee's actions cut that

25   life short and took Mr. Stewart away from his loved ones.

1    And, of course, there is nothing that any of us can do today

2    to bring their loved one back.

3            And that fact, of course, appropriately drives the

4    guideline range in this case.  It speaks to the inherent

5    dangers of arson.  It is a crime that is by its nature

6    chaotic and uncontrollable.  It's a crime in which

7    surrounding homes and businesses may be inadvertently

8    destroyed and firefighters or people trapped in the building

9    may be hurt or killed.  And in this case, Mr. Stewart has

10   paid the cost for that dangerous disregard for others.

11           But we also recognize, Your Honor, that it is

12   important in this case -- Mr. Lee's motivation for

13   committing the crime is important in this case.  The

14   evidence does appear clear that Mr. Lee did not intend to

15   hurt anybody.

16           There appear to have been people in those chaotic

17   days looking only to exploit the chaos and disorder in the

18   interest of personal gain or random violence.  As Mr. Rivers

19   pointed out, Mr. Lee does not count among them.

20           There were people out there as well who felt angry

21   and frustrated and disenfranchised and who were attempting

22   in many ways, in an unacceptably reckless and dangerous

23   manner, to give voice to those feelings, and Mr. Lee does

24   appear to be in that category.

25           His reasons in this case for setting that fire

1   matter.  We -- in our sentencing position we quoted

2   Mr. King's point, that a riot is the language of the

3   unheard.  Mr. Lee was terribly misguided, as he himself as

4   recognized, and his actions had unthinkable consequences,

5   but we agree that he appears to have believed that he was,

6   in Dr. King's words, engaging in the language of the

7   unheard.

8           And we do believe, we do agree that it is to his

9   credit that he immediately took responsibility for his

10  actions and withdrew his objection to the PSR.

11          Your Honor, in light of all those factors, we do

12  believe that a sentence of 144 months is sufficient.  No

13  sentence can bring Mr. Stewart back nor adequately reflect

14  the value of his life, but we believe that a downward

15  variance in this case will provide just punishment for the

16  crime.

17          Thank you.

18          THE COURT:  Thank you, Mr. Calhoun-Lopez.

19          Now, are there any victims of Mr. Lee's conduct

20  who wish to be heard?

21          MR. CALHOUN-LOPEZ:  Your Honor, we have consulted,

22  and they do not.  They have been listening and, of course,

23  are deeply invested in the Court's sentence, but they did

24  not feel the need to address the Court.  Thank you.

25          THE COURT:  Okay.  Thank you.

1    I have carefully reviewed the Presentence

2    Investigation Report and the addendum to that report.  I am

3    now prepared to impose the sentence.

4    I am grateful for the comments that have been made

5    here today:  Mr. Rivers, you on behalf of Mr. Lee; Mr. Lee,

6    your comments today as well; and Mr. Calhoun-Lopez.

7    Particularly Mr. Lee, the insight that you have

8    shown even in your words today on this most important day

9    for you, one that I have to believe everybody who is here

10   either present in person or virtually wishes we weren't here

11   for this reason.

12   It's clear from the comments that you've made that

13   you have a lot to contribute to this world, and spending any

14   time in prison impedes your ability to fully contribute all

15   that you have.

16   And, frankly, the world needs you.  The world

17   needs someone who is thoughtful, who is intelligent, who can

18   make a difference, and yet we're here today for a sentencing

19   as a result of a violent act that you committed.

20   It is the judgment of the Court that you, Montez

21   Terriel Lee, Jr., are sentenced to prison and that is for a

22   term of 120 months.

23   No fine is imposed.

24   Restitution is mandatory, but no requests have

25   been made at this time.  You're ordered to pay restitution

1    in the amount of zero dollars at this time.

2            You must pay a special assessment in the amount of

3    $100 to the United States, and that is due immediately.

4            On release from your imprisonment you will be

5    placed on supervised release, and that will be for a term of

6    three years.  While you are on supervised release, you must

7    comply with the following conditions:

8        (Extraneous background noise)

9            THE COURT:  Now, I am hearing some speaking in the

10   background and so I am going to ask that whoever is

11   listening, please mute your device.  I can tell that it's

12   not the lawyers who are speaking and that we are

13   overhearing.  So will everyone who is listening please mute

14   your device.

15       (The Court and courtroom deputy confer)

16           THE COURT:  I am also told that there's noise

17   around you perhaps, Mr. Lee, that I am hearing.  But are you

18   having any trouble hearing me, Mr. Lee?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Okay.  So, Mr. Lee, you must comply

21   with the mandatory conditions of supervised release, and

22   those conditions are described in Section 5D1.3(a) of the

23   United States Sentencing Guidelines and these conditions

24   include:

25           That you must not commit any crimes: federal,

1    state, or local.

2          You must not unlawfully possess a controlled

3    substance.

4          You must refrain from any unlawful use of a

5    controlled substance, and you must submit to one drug test

6    within 15 days after your release from imprisonment and at

7    least two periodic drug tests thereafter as determined by

8    the probation officer.

9          You must cooperate in the collection of a DNA

10   sample as directed by Probation.

11         And you must make restitution in accordance with

12   Title 18, United States Code, Sections 2248, 2259, 2264,

13   2327, 3663, 3663A, and 3664.

14         You also must comply with the standard

15   conditions of supervised release, and those are described in

16   Section 5D1.3(c) of the United States Sentencing Guidelines.

17   Now, these conditions include:

18         That you must report to the nearest United States

19   Probation and Pretrial Services Office within 72 hours after

20   your release from prison, unless the probation officer

21   instructs you to do otherwise.

22         You must not possess a firearm, ammunition,

23   destructive device, or any other dangerous weapon.

24         You're also ordered to abide by the following

25   special conditions of supervised release:

1           First, you must abstain from the use of alcohol

2       and other intoxicants and not frequent establishments whose

3       primary business is the sale of alcoholic beverages.

4           You must complete an immediate assessment or

5       participate in a program for substance abuse as approved by

6       the probation officer upon your release or relapse during

7       your term of supervised release, and that program may

8       include testing and inpatient or outpatient treatment,

9       counseling, or support group.  And, further, you must

10      contribute to the costs of such treatment as determined by

11      the United States Probation Office Co-Payment Program, not

12      to exceed the total cost.

13          You must participate in a psychological or

14      psychiatric counseling or treatment program as approved by

15      the probation officer.  And, further, you must contribute to

16      the costs of such treatment as determined by the Probation

17      Office Co-Payment Program, not to exceed the total cost of

18      that treatment.

19          And if you're not employed at a regular lawful

20      occupation as deemed appropriate by the probation officer,

21      you may be required to perform up to 20 hours of community

22      service per week until you are so employed.  And you also

23      may be required to participate in training, counseling,

24      daily job search, or other employment-related activities as

25      directed by the probation officer.

1       You must be screened for and/or participate in the

2    Re-Entry programming and you must abide by the rules -- or

3    the Re-Entry Court programming and you must abide by the

4    rules that govern that program.  And participation may

5    include referrals for substance abuse assessment and/or

6    treatment and testing, mental health assessment and/or

7    treatment, cognitive behavioral programs, medication

8    compliance, and any other programming deemed appropriate to

9    enhance your successful re-integration into the community.

10   And you must contribute to the costs of this program as to

11   substance abuse and/or mental health assessment and

12   treatment to the extent that you are deemed capable by the

13   United States Probation Office.

14       You must not knowingly communicate or otherwise

15   interact, and that is either in person, through a third

16   party, telephone, mail, electronic device, social media

17   websites or applications or otherwise, with any member or

18   prospect of the Gangster Disciples Gang or any criminal

19   street gang, as defined in Title 18, United States Code,

20   Section 521, without obtaining the permission of the

21   probation officer.

22       And should restitution be determined, you must

23   also comply with the following special conditions:

24       You must provide the probation officer access to

25   any requested financial information, including credit

1    reports, credit card bills, bank statements, and telephone

2    bills.

3         And you're prohibited from incurring new credit

4    card charges or opening additional lines of credit without

5    approval of your probation officer.

6         And I do direct the probation officer to furnish

7    you a written statement of all of the conditions of your

8    supervised release.

9         Now, does Mr. Lee request a particular location

10   for his incarceration, Mr. Rivers?

11        MR. RIVERS:  I would assume Minnesota.  Is that

12   correct, Mr. Lee?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Okay.  So then I recommend that you be

15   incarcerated in a facility either in Minnesota or near

16   Minnesota.

17        Now I'll provide the reasons for the sentence that

18   I have imposed.

19        First, I've considered all of the Section 3553(a)

20   factors and I find that the sentence I've imposed is

21   sufficient, but it's not greater than necessary, to reflect

22   the seriousness of your offense, Mr. Lee, and to provide

23   just punishment for that offense; to deter you, Mr. Lee,

24   from committing crimes in the future; to deter others from

25   committing this crime or similar crimes in the future; to

1   protect the public from you, sir; and to avoid unwarranted

2   disparities between Mr. Lee's sentence and the sentences of

3   defendants with similar records who have been found guilty

4   of similar conduct and to avoid disparities between

5   Mr. Lee's sentence and the sentences of his co-defendants.

6          Now, the sentence of imprisonment that I have

7   imposed is appropriately tailored to the facts and to the

8   circumstances that are present here.

9          Mr. Lee, you're in court today -- or you're before

10   the Court today because you committed a serious offense.

11   You burned a building, and by doing so you killed a man.

12   And, in addition, your actions permanently damaged the lives

13   of members of your community and the broader Twin Cities

14   community.

15          And I understand that you've faced a great deal of

16   adversity in your life, Mr. Lee.  I understand that you've

17   been abused for much of your childhood and you've

18   experienced absences from your parents -- or from your

19   mother.  You were homeless for several years as a teenager.

20   You've lost friends to gun violence.  You've struggled with

21   depression.  You've struggled with anxiety and

22   post-traumatic stress disorder.  And I will say no one

23   should have to endure the abuse and the loss that you have

24   experienced in your life, no one.

25          But you are a survivor and those experiences,

1    while they don't explain or excuse your actions and the

2    reason that you're here in court today, you are more than

3    your actions.  You're more than the person who poured a fire

4    accelerant on a business and then lit it on fire.  You're

5    more than the person who celebrated your actions on social

6    media as if there was nothing -- or as if there was anything

7    worth celebrating.  You're more than the person that

8    destroyed that business by fire.  You're more than the

9    person who set that fire, that ignited that fire, and that

10   killed a man.

11         And no matter how upset you may have been and you

12   may currently be, you are alive today.  You have a future.

13   The victim of that fire does not.  So while there are no

14   excuses for your actions on May 28, 2020, you have a chance

15   to move forward and live a productive life.  You have a

16   chance to move forward and contribute to a better life for

17   yourself, to a better life for those that you love, and to a

18   better life for others.

19         I hope that you use your prison term to address

20   the struggles that you have, Mr. Lee, and to commit to

21   treating and working through your depression, your anxiety,

22   your PTSD.

23         And I hope that you also realize how your actions

24   impact others, how they impact them either in a positive way

25   because of the good that you're contributing to the world or

1    how your actions impact others in a negative way because of

2    the destruction that you're committing.  And I hope you

3    choose the first.  I hope you choose to contribute positive

4    actions.

5          You have a long life ahead of you.  You're an

6    intelligent man.  You're an able person.  And you have some

7    experiences now that you can use as a force for good, even

8    though they were grounded in criminal behavior.

9          You can turn them around and certainly I hope that

10   you will turn your life around so that you are making a

11   change that is a positive one for yourself so that you

12   understand that your actions have consequences, and either

13   those actions can be negative actions and negative

14   consequences or they can be positive actions and positive

15   consequences.  I hope that you will take it upon yourself to

16   do the latter, to choose a positive role.

17         The world needs what you have to offer that is

18   positive, that is good, that is intelligent, that is able to

19   help others do the right thing and for you to do the right

20   thing as well.  We can't afford to waste you.  We can't

21   afford to let you waste yourself.

22         I hope that you will build upon all that you have

23   and do so in a positive way so that you move forward and do

24   the hard work that it takes to move forward in a positive

25   manner and to enjoy some success in your life.

1          I know that you're worth it, frankly.  I know that

2     you can do it, but it's not up to me to know it.  What

3     matters is that you know you're worth it.  What matters is

4     that you know that you can do it and that you prove it to

5     yourself; and that when you have doubts, because we all do,

6     I do and no doubt you do, when we have those doubts, we have

7     to look to others who can help us in a positive way.

8          And I hope that that's what you will do, that you

9     will reach out to people who can help you become the person

10    that you are certainly capable of being and the world needs

11    you to be.  And I certainly hope that you never again appear

12    in a courtroom unless you want to be there.

13         Now, the length of supervised release that I have

14    imposed is warranted for two reasons:  One, to protect the

15    public; secondly, to properly supervise and to assist you,

16    Mr. Lee.

17         I have imposed no fine because you lack the

18    financial means to pay one.

19         Now, restitution is mandatory for your offense and

20    that's pursuant to several laws, Title 18, United States

21    Code, Sections 2840 -- 2248, 2259, 2264, 2327, 3663, 3663A,

22    and 3664.

23         Now, I have not imposed restitution in any amount

24    because to date no restitution requests have been received.

25         Now, under Title 18, United States Code,

1    Section 3664(d)(5), if any victim's losses are not

2    ascertainable ten days prior to sentencing, I must, as the

3    Court, set a date for the final determination of victims'

4    losses.  That date cannot be any later than 90 days after

5    sentencing.

6            And I'll ask:  Mr. Calhoun-Lopez, are additional

7    restitution requests expected; and if so, what's the

8    government's position as to the date that should be set for

9    the final determination for victims' losses?

10           MR. CALHOUN-LOPEZ:  Your Honor, we have reached

11   out to both the Max It Pawn shop and the family of

12   Mr. Stewart.  As to the family, Your Honor, amounts of

13   restitution that can be paid are fairly limited by law and

14   statute, and the family has agreed that they have made --

15   they will make no restitution requests.  Max It Pawn,

16   likewise, has elected not to make a restitution request.  So

17   we do not anticipate any further requests and we believe

18   this restitution can be closed.

19           THE COURT:  Okay.  Very well.  Then if any victim

20   discovers losses after the restitution amount is final, and

21   that will be today -- there will be no restitution amount

22   ordered -- they will have 60 days after the discovery of

23   those losses to petition the Court for an amended

24   restitution order, and that order may be granted only upon a

25   showing of good cause for failure to include those losses in

1    the initial claim for restitution.

2           Now, Mr. Lee, you have the right to appeal your

3    conviction if you believe that your guilty plea was unlawful

4    or invalid in any way.  And you also have the right to

5    appeal your sentence to the extent that you have not waived

6    that right to appeal as part of your plea agreement.

7           And if you wish to appeal your conviction, your

8    sentence, or both, you must file a Notice of Appeal within

9    14 days after the entry of judgment of conviction in this

10   case.

11          And if you cannot afford to pay the cost of an

12   appeal, you can ask for permission to be excused from paying

13   the costs; and if you make that request, then the Clerk of

14   Court will file a Notice of Appeal on your behalf.

15          And the Presentence Investigation Report will be

16   kept in the Court's files under seal; and if an appeal is

17   filed, the report will be delivered to the United States

18   Court of Appeals for the Eighth Circuit.

19          Mr. Lee is currently in custody.  The Mandatory

20   Detention Act does apply.  So at the conclusion of this

21   hearing, you are remanded to the custody of the United

22   States Marshals, Mr. Lee.

23          Is there anything further that needs to be

24   addressed by the Court?  I'll ask Mr. Calhoun-Lopez first.

25          MR. CALHOUN-LOPEZ:  Your Honor, I'm sorry.  I am

1    in communication with my victim/witness specialist.  May I

2    ask the Court's indulgence for just 30 seconds to make sure

3    that I understand everything correctly before we close the

4    hearing today?

5            THE COURT:  Yes, you may.

6            MR. CALHOUN-LOPEZ:  Thank you, Your Honor.

7            THE COURT:  You're welcome.

8        (Pause)

9            MR. CALHOUN-LOPEZ:  Thank you, Your Honor.  I

10   apologize.  I misunderstood something, but fortunately our

11   office's victim/witness specialist has corrected me.

12           When I spoke to the family, I was under the

13   impression that they were not making a restitution request,

14   but apparently that has either changed or I misunderstood.

15   They will be submitting a request for $842 for Mr. Stewart's

16   cremation, and so we will submit a request for that.

17           And I would ask the Court to hold restitution open

18   for one week for the parties to submit those documents and

19   get this resolved.

20           THE COURT:  Okay.  Thank you.

21           Any objection, Mr. Rivers?

22           MR. RIVERS:  No, Your Honor.

23           THE COURT:  Okay.  Then I will hold open the

24   request for restitution until we receive it.  We will hold

25   the matter open and will not finalize that issue, and I will

1    allow for two weeks from today's date for it to be

2    submitted.  I hope it's submitted sooner than that, but we

3    will, though, allow that amount of time to receive that

4    request.

5              MR. CALHOUN-LOPEZ:  Thank you, Your Honor.

6              THE COURT:  Is there anything further that we need

7    to address at this time?

8              MR. CALHOUN-LOPEZ:  Not from the government, Your

9    Honor.

10             THE COURT:  From Mr. Lee, Mr. Rivers?

11             MR. RIVERS:  No, Your Honor.

12             THE COURT:  Okay.  So, Mr. Lee, you are currently

13   in custody.  The Mandatory Detention Act does apply.  You

14   are remanded to the custody of the United States Marshal at

15   the conclusion of this hearing.

16             Good luck to you, sir.  I hope that you will be

17   well and I hope that you will use the time that you are

18   incarcerated to make very positive changes in your life so

19   that when you leave prison, you are able to be successful in

20   pursuing your dreams.

21             This concludes our hearing.

22        (Court adjourned at 11:48 a.m.)

23                         *     *     *

24

25

1

2

3      I, Lori A. Simpson, certify that the foregoing is a
correct transcript from the record of proceedings in the
4  above-entitled matter.

5              Certified by:   *s/ Lori A. Simpson*

6                              Lori A. Simpson, RMR-CRR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25