UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-168 (WMW/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **AFFIDAVIT** |
| MONTEZ TERRIEL LEE, JR., | |
| Defendant. | |

I Kira Aakre Kelley, hereby declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S. Code § 1746 that the foregoing is true and correct:

1. I have interviewed Corrine Cochrane and Montez Lee Jr. about matters related to this case.

2. I proffer that at an evidentiary hearing in this matter, Mr. Lee will testify to the following:

    a. Mr. Rivers consistently failed to communicate with Mr. Lee, to consult him regarding key decisions in his case, to share filings with Mr. Lee either before or after they were filed, and to share other information in Mr. Rivers' possession of material relevance to Mr. Lee's case. Specifically:

    b. Mr. Lee did not know until the middle of his sentencing hearing on January 14, 2022 that Mr. Rivers had unilaterally deviated from their previously agreed upon plan to contest Mr. Lee's responsibility for OLS's death.

    c. Mr. Lee was never given the opportunity to review the late-filed sentencing memo wherein Mr. Rivers conceded Mr. Lee's responsibility for OLS's death and did not know that the memo contained this concession until the spring of 2023, nor that it

1

was filed past this Court's deadline, until the affiant was at last able to retrieve the casefile send these documents to Mr. Lee.

d. Mr. Lee called Mr. Rivers immediately following the January 14, 2023 sentencing proceeding to ask Mr. Rivers to file an appeal. Mr. Rivers responded: "I knew you were going to say that," and then hung up and refused to file the appeal.

e. Mr. Lee called Mr. Rivers numerous times over the next several months to request his casefile, but Mr. Rivers ignored Mr. Lee's calls and requests.

f. After several months of refusing Mr. Lee's requests to have Mr. Rivers transfer Mr. Lee's casefile and to discuss post conviction remedies, Mr. Rivers sent Mr. Lee a letter stating that Mr. Rivers was no longer Mr. Lee's attorney.

g. In July of 2022, Ms. Cochrane visited Mr. Lee at FCI Ray Brook, and Ms. Cochrane agreed to help Mr. Lee find another attorney to help with evaluating post conviction claims and to retrieve the withheld file from Mr. Rivers.

h. Mr. Lee heard that Ms. Cochrane had found another attorney, the affiant, willing to have a preliminary legal call with him, and confirmed with Ms. Cochrane that the process for this attorney to set up a legal call would be for them to call his counselor, Michael Castine.

i. Mr. Lee continued to follow up with Ms. Cochrane about the affiant's attempts to reach him, and learned from Ms. Cochrane that the affiant had been placing repeated calls to Mr. Castine to no avail. Through Ms. Cochrane, Mr. Lee authorized the affiant to file a letter threatening legal action if Mr. Lee continued to be denied a legal call with the affiant.

    j.  Mr. Lee and his fellow inmates are suffering as a result of the ongoing staffing crisis at FCI Raybrook. Mr. Lee has observed his fellow inmates' medical needs go unmet, has seen the facility restrict his and others' access to the law library, has been placed in a facility-wide lockdown because not enough staff were present that day to keep the facility running, has been served food filled with rat feces because not enough staff existed to maintain sanitary conditions in the kitchen (and heard that the inmates working in the kitchen were threatened with being fired should they object to serving their peers the rat feces), and has seen last minute staffing shortages force FCI Ray Brook to cancel inmates' visits from loved ones.

    k.  Only after Mr. Lee enlisted the support of the affiant was Mr. Lee able to finally obtain his casefile from Mr. Rivers.

    l.  FCI Ray Brook staff continue to obstruct Mr. Lee's access to his attorney with the excuse of being short staffed, including by refusing to set up legal calls for him to discuss these ongoing proceedings with the affiant. Mr. Lee is forced to choose between not being able to meaningfully consult with his attorney in advance of deadlines and decisions, or sacrificing confidentiality and privilege by relaying messages through Ms. Cochrane on platforms screened by prison staff.

3.  I proffer that at an evidentiary hearing in this matter, Ms. Cochrane will testify to the following:

    a.  Ms. Cochrane has known Mr. Lee for approximately three years.

    b.  Throughout this time, Ms. Cochrane and Mr. Lee have exchanged regular communication by telephone, text message, email, several in person visits to the

3

    Washington County Jail in Stillwater Minnesota, and one in person visit to the FCI Ray Brook in New York.

c. Ms. Cochrane was concerned and frustrated at how Mr. Rivers demonstrated an overall lack of communication at crucial points in Mr. Lee's legal proceedings.

d. Ms. Cochrane spoke to Mr. Lee shortly after his sentencing hearing, during which communication Mr. Lee registered his surprise at Mr. Rivers' deviation from the plan to challenge Mr. Lee's responsibility for OLS's death and expressed his desire to appeal, which desire he said he communicated to Mr. Rivers.

e. Mr. Lee enlisted Ms. Cochrane's support in helping find him another attorney after Mr. Rivers continued refusing to respond to Mr. Lee's requests to discuss his post conviction options and receive his case file.

f. Ms. Cochrane reached out to the affiant and facilitated an agreement between the affiant and Mr. Lee wherein the affiant would set up a call with Mr. Lee to discuss Mr. Lee's situation and any potential legal recourse.

g. Ms. Cochrane confirmed with Mr. Lee that the process for the affiant to get in touch with him was to set up an appointment by calling Michael Castine, Mr. Lee's counselor, at a number Mr. Lee provided.

h. Ms. Cochrane was a witness to the telephone conversation between the affiant and a supervising staff member at FCI Ray Brook on December 23, 2022, where the affiant asked for confirmation about the process for setting up a legal call with Mr. Lee and the staff member told the affiant to call Mr. Castine to set up an appointment. Also during this call, when the affiant noted that Mr. Castine had yet to respond after months of calls, the staff member cited staffing shortages to

excuse the facility for abandoning many of the services and functions that the facility was supposed to provide, and that counselors like Mr. Castine were taken from their positions to be assigned shifts as corrections officers. The staff member told the affiant to just keep following the procedure of calling Mr. Castine.

i. Ms. Cochrane experienced the impacts of these staffing shortages firsthand when she was almost denied the opportunity to visit Mr. Lee at FCI Raybrook in July of 2022. After Ms. Cochrane filled the paperwork out months in advance and made plans to travel to New York from Minnesota during the limited visitation hours that FCI was allowing, due to restrictions and staffing shortages, FCI Ray Brook approved her visit. When Ms. Cochrane attempted multiple times to call Mr. Castine at the number Mr. Lee provided in order to confirm the details of her visit, Mr. Castine refused to answer the phone or respond to any of Ms. Cochrane's messages. About a week before the scheduled visit date, Mr. Lee informed Ms. Cochrane that the visitation schedules had changed and their visit would be canceled. Since Ms. Cochrane was traveling all the way from Minnesota to visit and could not reschedule her cross-country travel, she increased the frequency of her calls to Mr. Castine until he eventually called her back, a few days before the visit. Mr. Castine initially stated that a visit wouldn't be possible until the following weekend, but eventually after much back and forth Mr. Castine agreed to allow Ms. Cochrane to visit on the date she had been previously approved for.

j. Ms. Cochrane relayed information between Mr. Lee and the affiant by way of monitored channels of communication with Mr. Lee, such as telling Mr. Lee that the affiant had been repeatedly calling Mr. Castine to set up calls with Mr. Lee.

    k. Through relaying this information, it is clear to Ms. Cochrane that Mr. Castine does not fulfill requests by Mr. Lee or by the affiant to set up legal calls in a reasonable or timely manner.

4. I proffer that at an evidentiary hearing, phone records subpoenaed from FCI Ray Brook could show that I placed regular calls to Mr. Michael Castine and FCI Ray Brook, which he neither answered nor responded to. At a minimum these calls were placed on: August 26, September 15, October 13, November 28, twice on December 23, and December 29 of 2022, and January 27 and February 16 of 2023.

5. I proffer that at an evidentiary hearing, communications received by FCI Ray Brook could be introduced showing that FCI Ray Brook responded immediately to a cease and desist letter I had sent them in February of 2023, notifying them that I would commence legal action should they continue refusing to allow Mr. Lee and I to have a legal call. This email exchange, including the letter attached to the first email as a pdf, is appended to this affidavit and labeled as Exhibit 1.

Executed on July 24, 2023 in Hennepin County, Minnesota.

*(signature)*
KIRA A. KELLEY
MN Bar No. 0402932
238 Emerald St. SE
Minneapolis, MN 55414
(802) 683-4086
kira@climatedefenseproject.org

*Attorney for Montez Lee*

6

**EXHIBIT 1**



National Lawyers Guild Mail - Deprivation of Access to Counsel



Vermont NLG <vermont@nlg.org>

---

**Deprivation of Access to Counsel**
2 messages

---

**Kira Kelley** <vermont@nlg.org>  Mon, Feb 27, 2023 at 11:54 AM
To: RBK-ExecAssistant@bop.gov

Hello Ray Brook Staff,

Please find a courtesy copy of a letter sent to your legal department last week. I await a response.

Thank you,

Kira Kelley
------
Kira Kelley, Esq.
*Chair*, VT National Lawyers Guild
pronouns: they/she
t. (802) 417-2173

📄 Notice of Claim.pdf
246K

---

**RBK-ExecAssistant-S (BOP)** <RBK-ExecAssistant-S@bop.gov>  Mon, Feb 27, 2023 at 1:24 PM
To: Kira Kelley <vermont@nlg.org>

I apologize for any inconvenience this has caused; however, this is the first I am hearing of this. I will ensure your email gets to the appropriate staff for handling.

Thank you.

**From:** Kira Kelley <vermont@nlg.org>
**Sent:** Monday, February 27, 2023 11:54 AM
**To:** RBK-ExecAssistant (BOP) <RBK-ExecAssistant@bop.gov>
**Subject:** [EXTERNAL] Deprivation of Access to Counsel

[Quoted text hidden]



**Kira Aakre Kelley**

*Attorney at Law*
*President, VT National Lawyers Guild*
*NH Bar ID: 271359*

21 B Acme Street
Windsor, VT 05089

vermont@nlg.org

*MN Bar ID: 402932*

February 16, 2023

Ray Brook FCI
128 Ray Brook Road
Ray Brook, NY 12977

**Re: Denial of Access to Counsel**

Dear Warden Christensen,

This letter is to inform you that if my phone calls to this facility are not promptly returned, I will begin pursuing legal action. I have been attempting to set up an attorney call with Mr. Montez Lee, #22429-041, since August of 2022. For over half a year now, I have been leaving messages for his counselor, Mr. Castine. Mr. Castine has not answered, nor have I received a single return phone call from him. I have confirmed with other FCI employees that I am following the correct procedure for scheduling a legal visit, and yet have been unable to do so.

Other staff at this facility who I have spoken to cited understaffing as an excuse to justify withholding access to resources, indicating that Mr. Castine and others have been pulled from their assigned jobs to cover corrections officers' shifts.

The human beings purportedly under your care are constitutionally (and ethically) entitled to attorney calls and other support services, and failure on your part to provide such services is simply unacceptable. If you do not have the staff to maintain a humane facility at its current operating capacity, I suggest that you approve more prisoners for parole.

Sincerely

*Kira Kelley*
Kira A. Kelley, Esq
*President*, VT National Lawyers Guild
NH Bar ID: 271359
MN Bar ID: 0402932
vermont@nlg.org
t. (802) 417-2173



Vermont NLG <vermont@nlg.org>

## good morning

**Castine, Michael (BOP)** <MCastine@bop.gov>   Tue, Feb 28, 2023 at 6:50 AM
To: "vermont@nlg.org" <vermont@nlg.org>

So, you sent an email about Mr. Lee and setting up an legal Visit, i do apologize if for some reason you could not get a hold of me, how the process works is the C-building officer is supposed to contact me VIA radio that i have a outside line. I do recall speaking with you but i do apologize i don't remember anything about a legal Visit, i can set that up for ASAP if you would like i do around 15 legal calls per week and around 30 legal Visits per year, and this is the first time in my very long career i have had an issue and i apologize if it was something on my end but at no time did the inmate give me concern he was in need of a legal visit.

If you want i can get you on a legal call ASAP also and set up the legal visit at the same time, even though it might not be me because i am augmented again the next 3 weeks, but i will make sure it gets done.
Email is always best to reach out.